UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALEJANDRA PEREZ, | ) |
| | ) |
| Plaintiff, | ) Case No. 1:25-cv-04662 |
| | ) |
| v. | ) |
| | ) |
| LAKE FOREST HIGH SCHOOL DISTRICT 115, | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT**

**NOW COMES** ALEJANDRA PEREZ ("Plaintiff"), by and through her undersigned counsel, complaining of LAKE FOREST HIGH SCHOOL DISTRICT 115 ("Defendant") as follows:

**NATURE OF PLAINTIFF'S CLAIMS**

1. Plaintiff brings this action seeking redress for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.* ("Title VII"), the Pregnancy Discrimination Act of 1978 ("PDA"), 42 U.S.C. §2000e *et seq.*, on the basis of her sex (female) and pregnancy and retaliation against her for opposing gender and pregnancy discrimination.

2. This lawsuit further arises under the Civil Rights Act of 1964, as amended, 42 U.S.C. §1981, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.* ("Title VII"), seeking redress for Defendants race-based and national origin-based discrimination.

3. Plaintiff also alleges under the Family and Medical Leave Act of 1993, 29 U.S.C. §2601 *et seq.* ("FMLA") seeking redress for Defendant's interference with Plaintiff's FMLA rights and Defendant's retaliation for Plaintiff requesting/utilizing their FMLA rights.

4. This action further arises under the Pregnancy Workers Fairness Act, 42 U.S.C. §2000gg *et seq.* as amended, ("PWFA") for pregnancy-based discrimination, a failure to accommodate Plaintiff's pregnancy, and retaliation.

## JURISDICTION AND VENUE

5. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as Title VII, Section 1981, the PDA, and the PWFA are federal statutes.

6. Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(b)(2) as the events giving rise to Plaintiff's claims occurred within this judicial district.

## ADMINISTRATIVE PREREQUISITES

7. All conditions precedent have been satisfied.

8. Plaintiff filed a charge of discrimination against Lake Forest High School District 115 with the Equal Employment Opportunity Commission ("EEOC"). *See* attached Exhibit A.

9. Plaintiff received a Notice of Right to Sue from the EEOC as to Defendant and Plaintiff filed this action within ninety (90) days of Plaintiff's receipt of the EEOC's Notice of Right to Sue. *See* attached Exhibit B.

## THE PARTIES

10. Plaintiff is a natural person, over 18-years-of-age, who at all times relevant resided in Lake Bluff, Illinois.

11. Defendant is an Illinois public school district that operates one high school in Lake Forest, Illinois.

12. Defendant maintains a principal place of business in Lake Forest, Illinois.

13. At all times relevant, Defendant had at least fifteen employees, was an "employer" as defined by Title VII, and was engaged in an industry affecting commerce within the meaning

of Title VII, 42 U.S.C. §2000e(b).

14. At all times material to this Complaint, Plaintiff was an "eligible employee" as defined by the FMLA, 29 U.S.C. §2611(2)(A).

15. At all times material, Defendant was an "employer" as defined by 29 U.S.C. §2611(4).

## BACKGROUND FACTS

16. Plaintiff was employed by Defendant on or around August 16, 2016, and most recently held the position as a Business Office Generalist.

17. Plaintiff, as a Hispanic pregnant female, is a member of a protected class or classes.

18. During Plaintiff's employment, Defendant subjected Plaintiff to different terms and conditions of employment than others not within her protected class (non-Hispanics, non-pregnant females and males in general).

19. In or around December 2023, Plaintiff formally requested a hybrid remote work schedule under the Pregnant Workers Fairness Act (PWFA) due to pregnancy-related flare-ups, as Plaintiff's duties could largely be performed remotely.

20. Thus, Plaintiff engaged in protected activity by requesting an accommodation related to her disability.

21. This accommodation had been granted to non-Hispanic employees, including a Caucasian employee and another Caucasian administrator on a hybrid remote schedule.

22. However, Assistant Superintendent of Human Resources Phillip Georgia ("Mr. Georgia"), who was not Plaintiff's direct supervisor, denied Plaintiff's request, stating she could not be accommodated.

23. Therefore, Plaintiff was being treated differently than those outside her protected

3

class (Hispanic) as other individuals were granted the accommodation.

24. Despite other employees being granted similar accommodations without extensive documentation, Plaintiff was asked to provide unnecessary medical documentation, in violation of Plaintiff's rights under Title VII and the PWFA.

25. After providing extensive information and multiple doctor's notes, which was not required of those outside Plaintiff's protected class, Plaintiff's request was eventually approved in or around February 2024.

26. However, Plaintiff was required to present a formal proposal to justify her need, outlining specific days and duties that could be managed remotely despite Plaintiff's clear need for working remotely due to the various symptoms her pregnancy was causing.

27. Even after approval, Kathryn Labuhn ("Ms. Lahuhn"), Plaintiff's direct supervisor, delayed her access to equipment and continued reviewing Plaintiff's proposed schedule plan, forcing Plaintiff to exhaust her PTO as she dealt with pregnancy flare-ups.

28. During this period, Ms. Labuhn's attitude towards Plaintiff changed as she crafted a hostile work environment.

29. For example, Ms. Labuhn began ignoring Plaintiff, refusing to acknowledge her presence, and imposing additional tasks on Plaintiff.

30. Furthermore, Ms. Labuhn closely monitored Plaintiff's activities, demanding frequent updates on everything Plaintiff was doing.

31. Additionally, Ms. Labuhn became upset when other coworkers offered assistance related to Plaintiff's pregnancy, expressing frustration over any modifications to Plaintiff's workflow.

32. All of Ms. Labuhn's actions created a hostile work environment as she treated

Plaintiff differently on the basis of her race, National Origin, and pregnancy status.

33. In or around March 2024, Plaintiff filed a written complaint with HR regarding Ms. Labuhn's micromanagement and tied it directly to both pregnancy discrimination and retaliation.

34. Due to Phillip and Jennifer Hermes, the main supervisor of the department, inability to take remedial measures, Plaintiff also filed a complaint against them to the superintendent, Matthew Montgomery, on the basis of pregnancy discrimination on or around April 22, 2024.

35. On or around April 23, 2024, HR abruptly placed Plaintiff on paid administrative leave, allegedly due to "concerns for my health."

36. This was blatant and clear retaliation for opposing pregnancy discrimination as no investigation and/or remedial measures were taken.

37. Instead, Plaintiff was instructed to undergo an evaluation by the company's psychiatrist, which would require Plaintiff to relinquish access to her full medical records.

38. Plaintiff declined this invasive requirement, which forced Plaintiff to transition from administrative leave to FMLA leave beginning on or around May 6, 2024.

39. This action also caused Plaintiff to start her FMLA leave earlier than she had initially planned.

40. Defendant's actions of forcing Plaintiff to begin FMLA earlier constitutes interference to Plaintiff's FMLA rights.

41. On or around July 31, 2024, Plaintiff received notification from HR that her position as Business Office Generalist was set to be presented to the Board on or around August 13, 2024, for elimination, effective September 24, 2024, which was the scheduled end date for Plaintiff's FMLA leave.

42. In or around early September 2024, Mr. Georgia texted Plaintiff with an "update

5

on my employment" and later followed up with an email informing Plaintiff that she was being transferred to a different position within the district.

43. During this time, Plaintiff became aware that her duties had been redistributed among other employees, who were also working extended hours to cover Plaintiff's responsibilities, and that a substitute had been hired specifically to assist with her primary tasks in accounts payable.

44. Previously, Plaintiff was told her leave did not require a substitute, as they claimed Plaintiff's duties could be absorbed by others.

45. However, this was inaccurate, as they indeed hired a substitute to handle Plaintiff's essential responsibilities.

46. On or around August 20, 2024, Plaintiff was informed that her position had been eliminated, and Plaintiff was placed on "recall" status, meaning she would be considered for reassignment only if another opening became available.

47. Despite assurances of a transfer, the position offered to Plaintiff was the lowest-paying role within the district, which would result in a $20,000 salary cut, along with a reduction in her employment status from 12 months to 10 months.

48. Given these newly offered employment conditions, Plaintiff declined the transfer resulting in a constructive discharge on or around September 24, 2024.

49. Since December 2023, Plaintiff had been experiencing discrimination based on her National Origin, Race, and pregnancy status.

50. Defendant's expectations of detailed documentation for her accommodations, micromanagement of her tasks, failure to address or investigate her complaints, and providing Plaintiff a replacement role which would have resulted in a $20,000 pay decrease left Plaintiff no

other option by to resign based on the conditions in which Defendant imposed.

51. Plaintiff had no record of disciplinary actions against her.

52. In response to Plaintiff's complaint and request for accommodations, Defendant unlawfully constructively discharged Plaintiff's employment on or about September 24, 2024.

53. Based on Plaintiff's employment record and timing relating to her requests and/or complaints, there could be no question that Plaintiff's termination was based on her pregnancy and in retaliation for opposing the blatant gender and pregnancy discrimination

54. Defendant interfered with Plaintiff's FMLA rights and retaliated against Plaintiff after Plaintiff was forced to begin her FMLA medical leave early.

55. At all times relevant, Plaintiff met or exceeded Defendants' performance expectations.

## DAMAGES

56. As a result of Defendants' conduct, Plaintiff suffered damages, including: loss of employment, loss of income, loss of employment benefits, mental anguish, financial distress, emotional distress, humiliation, and loss of enjoyment of life.

## COUNT I
### Violation of Title VII of the Civil Rights Act of 1964
### (Pregnancy-Based Discrimination)

57. Plaintiff repeats and re-alleges paragraphs above as if fully stated herein.

58. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based of Plaintiff's pregnancy, in violation of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*.

59. Plaintiff met or exceeded performance expectations.

60. Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

61. Defendant terminated Plaintiff's employment on the basis of Plaintiff's pregnancy.

62. Plaintiff is a member of a protected class under Title VII, due to Plaintiff's pregnancy.

63. Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

64. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT II
**Violation of the Pregnant Workers Fairness Act**
**(Pregnancy-Based Discrimination)**

65. Plaintiff repeats and re-alleges paragraphs above as if fully stated herein.

66. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's pregnancy-related medical conditions in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101 *et seq*. as adopted by the Pregnant Workers Fairness Act, 42 U.S.C. §2000gg(7).

67. In pertinent part, the PWFA states,

It shall be an unlawful employment practice for a covered entity to—

(4) require a qualified employee to take leave, whether paid or unpaid, if another reasonable accommodation can be provided to the known limitations related to the pregnancy, childbirth, or related medical conditions of the qualified employee… (PWFA, 42 U.S.C. §2000gg-1(4)).

68. Plaintiff met or exceeded performance expectations.

69. Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

70. Defendant terminated Plaintiff's employment on the basis of Plaintiff's disability.

71. Defendant's conduct toward Plaintiff illustrated a willful and/or reckless violation of the ADA.

72. Plaintiff is a member of a protected class under the PWFA, due to Plaintiff's pregnancy-related medical conditions.

73. Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

74. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

### COUNT III
**Violation of the Pregnant Workers Fairness Act**
**(Failure to Accommodate)**

75. Plaintiff repeats and re-alleges paragraphs above as if fully stated herein.

76. By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices by failing to accommodate Plaintiff's pregnancy-related medical conditions in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101 *et seq*. as adopted by the Pregnant Workers Fairness Act, 42 U.S.C. §2000gg(7).

77. Plaintiff has a known limitation in the form of a physical or mental condition related to, affected by, or arising out of pregnancy.

78. Plaintiff was a qualified employee under the Pregnant Workers Fairness Act, 42 U.S.C. §2000gg(6)(A-C).

79. Defendant failed to engage in the interactive process to determine the appropriate accommodations after Plaintiff requested reasonable accommodations.

80. Plaintiff's reasonable accommodations that were requested was not an undue burden on Defendant.

81. Defendant did not accommodate Plaintiff's pregnancy.

82. Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

83. As a direct and proximate result of the failure to accommodate described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT IV
### Violation of Title VII of the Civil Rights Act of 1964
### (Retaliation)

84. Plaintiff repeats and re-alleges paragraphs above as if fully stated herein.

85. Plaintiff is a member of a protected class under 42 U.S.C. §2000e, *et seq.*

86. During Plaintiff's employment with Defendant, Plaintiff reasonably complained to Defendant about conduct that constituted pregnancy discrimination and/or requested pregnancy-related accommodations.

87. As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.*

88. Plaintiff suffered adverse employment action in retaliation for engaging in a protected activity.

89. By virtue of the foregoing, Defendant retaliated against Plaintiff based on Plaintiff's engagement in protected activity, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*.

90. Defendant's retaliatory conduct toward Plaintiff illustrated a willful and/or reckless violation of Title VII.

91. As a direct and proximate result of the above-alleged willful and/or reckless acts of Defendant, Plaintiff has suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

**COUNT IV**
**Violation of 42 U.S.C. §1981**
**(Race/National Origin-Based Discrimination)**

92. Plaintiff repeats and re-alleges all previous paragraphs as if fully stated herein.

93. Section 1977 of the Revised Statutes, 42 U.S.C. §1981, as amended, guarantees persons of all races, colors, and national origin the same right to make and enforce contracts, regardless of race, color, or national origin. The term "make and enforce" contracts includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

94. Defendant's conduct against Plaintiff's race amounts to a pattern or practice of systemic race discrimination that constitutes illegal, intentional race/national origin discrimination in violation of 42 U.S.C. §1981.

95. Plaintiff was subjected to and harmed by Defendant's systemic and individual discrimination.

96. Defendant's unlawful conduct resulted in considerable harm and adverse employment action to Plaintiff and Plaintiff is therefore entitled to all legal and equitable remedies under §1981.

97. As a direct and proximate result of the race-based discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

### COUNT V
### Violation of Title VII of the Civil Rights Act of 1964
### (National Origin-Based Discrimination)

98. Plaintiff repeats and re-alleges all previous paragraphs as if fully stated herein.

99. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's national origin/race, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*.

100. Plaintiff is a member of a protected class under Title VII, due to Plaintiff's national origin/race.

101. Plaintiff met or exceeded performance expectations.

102. Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

103. Defendant terminated Plaintiff's employment on the basis of Plaintiff's national origin/race.

104. Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

105. As a direct and proximate result of the discrimination described above, Plaintiff

has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

### COUNT VI
### Violation of the Family And Medical Leave Act
### (FMLA Interference - Unlawfully Denial of FMLA Rights)

106. Plaintiff repeats and re-alleges all previous paragraphs as if fully stated herein.

107. In or around August 2017, Plaintiff was eligible for FMLA leave.

108. At all times material, Plaintiff gave proper notice to her employer by informing them of the serious medical condition, which required Plaintiff to take medical leave to tend to her pregnancy.

109. Defendant controlled Plaintiff's work schedule and conditions of employment.

110. Plaintiff provided enough information for their employer to know that Plaintiff's potential leave may be covered by the FMLA.

111. Despite their knowledge of Plaintiff's medical condition, her employer imposed invasive medical requirements to continue on administrative leave forcing Plaintiff to begin to exhaust her FMLA leave earlier than intended.

112. When Plaintiff's employer failed to notify Plaintiff of their eligibility status and rights under the FMLA and failed to notify Plaintiff whether the requested leave was or could be designated as FMLA leave, the Defendant interfered with Plaintiff's rights under the FMLA.

113. Despite Plaintiff's FMLA eligibility, Defendant unlawfully denied Plaintiff's utilization of their FMLA rights.

114. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

115. As a direct and proximate result of the interference described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

**COUNT VII**
**Violation of the Family Medical Leave Act**
**(FMLA Retaliation)**

116. Plaintiff repeats and re-alleges all previous paragraphs as if fully stated herein.

117. Defendant terminated Plaintiff took FMLA leave to tend to her pregnancy.

118. Defendant terminated Plaintiff because she requested/took FMLA leave as described above.

119. Specifically, Plaintiff requested FMLA leave when she declined Defendant's invasive medical requirements for administrative leave.

120. Following Plaintiff's FMLA leave, Defendant offered Plaintiff a different position which would have limited Plaintiff's employment time to 10 months and reduced her salary by $20,000.

121. Defendant has intentionally engaged in unlawful employment practice in violation of the FMLA, by retaliating against Plaintiff for having requested to take leave for medical reasons.

122. Plaintiff's request for medical leave pursuant to the FMLA was a direct and proximate cause of Plaintiff's termination.

123. As a direct and proximate result of the retaliation described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of

enjoyment of life.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff requests the following relief:

a. A judgment in favor of Plaintiff and against Defendants;

b. Back pay with interest;

c. Payment of interest on all back pay recoverable;

d. Front pay;

e. Compensatory and punitive damages;

f. Reasonable attorney's fees and costs;

g. Pre-judgment interest if applicable; and

h. Any further relief as the Court deems just and proper

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Dated: April 29th 2025.　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　*/s/ Mohammed O. Badwan*
　　　　　　　　　　　　　　　　　　　　　　Mohammed O. Badwan
　　　　　　　　　　　　　　　　　　　　　　SULAIMAN LAW GROUP, LTD.
　　　　　　　　　　　　　　　　　　　　　　2500 South Highland Avenue
　　　　　　　　　　　　　　　　　　　　　　Suite 200
　　　　　　　　　　　　　　　　　　　　　　Lombard, Illinois 60148
　　　　　　　　　　　　　　　　　　　　　　(630) 575-8180
　　　　　　　　　　　　　　　　　　　　　　mbadwan@sulaimanlaw.com